UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
WILLIAM GIDDENS,

            Plaintiff,

- against -

THE CITY OF NEW YORK; THE NEW YORK
CITY POLICE DEPARTMENT; DETECTIVE
DENNIS P. GRIFFIN; POLICE OFFICERS JOHN
DOES 1-3; LOUIS J. PALUMBO; and JULIE
PALUMBO,

            Defendants.
-------------------------------------------------------------X

COMPLAINT



07 CIV 9569

Jury Trial Demanded

COMES NOW, William Giddens ("Mr. Giddens"), by and through the undersigned attorneys, The Law Offices of Neal Brickman, 317 Madison Avenue, 21st Floor, New York, New York 10017, and as and for his complaint against defendants, The City of New York ("City"), The New York City Police Department ("NYPD"), Detective Dennis P. Griffin ("Griffin"), Police Officers John Does 1-3 ("Does" and together with City, NYPD and Griffin, the "City Defendants"), Louis J. Palumbo ("Mr. Palumbo") and Julie Palumbo ("Ms. Palumbo", and together with Mr. Palumbo, and the City Defendants, "Defendants" or "defendants"), hereby avers, alleges and states as follows:

### Statement Pursuant to Local Civil Rule 1.9

1.     Plaintiff is an individual citizen of the United States of America and, as such, has no interests or subsidiaries that need to be disclosed.

### Nature of the Action

2.     This is a civil rights action in which plaintiff seeks damages to redress the deprivation, under color of state law, of rights secured to him under the United States

Constitution and the laws of the State of New York. Mr. Giddens was deprived of his constitutional, statutory and common law rights when defendants, individually and severally, violated Mr. Giddens's civil rights by, *inter alia*, harassing Mr. Giddens; subjecting Mr. Giddens to physical abuses and humiliation in contravention of Mr. Giddens's civil rights and known policy and practice; conspiring to and actually falsely arresting Mr. Giddens; conspiring to and actually maliciously prosecuting him; conspiring to and actually falsely imprisoning Mr. Giddens; conspiring to and actually assaulting Mr. Giddens; conspiring to and actually battering Mr. Giddens; conspiring to and intentionally causing Mr. Giddens extreme emotional distress.

### Jurisdiction

3. This action is brought pursuant to 42 United States Code § 1983; and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 United States Code §§ 1331 and 1343, as well as the aforementioned statutory and constitutional provisions.

4. This Court has subject matter jurisdiction over all claims arising out of the same facts and circumstances brought under New York State law pursuant to the doctrine of pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

### Venue

5. Venue is based upon defendant's residence pursuant to 28 U.S.C. § 1391 and as a substantial part, if not all, of the events giving rise to this action occurred in this district.

### Notice of Claim

6. Written notice was provided to the Municipal Defendants through a Notice of Claim with the City of New York on November 15, 2006. A 50-H Hearing was duly held on

June 11, 2007. More than thirty (30) days have elapsed since service of the signed transcript of that hearing upon the City of New York and the matter has not since been settled or disposed of in any manner.

### Parties

7. William Giddens ("Giddens" or "Plaintiff") is a male citizen of the United States with principal residence in the State of Florida.

8. At all times relevant hereto, the City of New York was, and is, a municipality duly incorporated under the laws of the State of New York.

9. Upon information and belief, at all times relevant hereto, the New York City Police Department was, and is, an arm of the City of New York and thereby governed by the same laws and regulations as the City.

10. At all times relevant hereto, defendant Griffin was, and is, a Detective in the NYPD who acted, at all times relevant hereto, in the capacity of an agent, servant or employee of the City and the NYPD. He, upon information and belief, is an individual citizen of the United States who resides in the City and State of New York. He is sued individually and in his official capacity.

11. At all times relevant hereto, defendants Does were, and are, officers in the NYPD who acted, at all times relevant hereto, in the capacity of agents, servants or employees of the City and the NYPD. They, upon information and belief, are individual citizens of the United States who reside in the City and State of New York. They are sued individually and in their official capacity.

12. Upon information and belief, at all times relevant hereto, defendant Mr. Palumbo

was, and is, an individual citizen of the United States who resides, upon information and belief, in the State of Connecticut and is the current husband of Julie Palumbo, the former spouse of Plaintiff.

13.  Upon information and belief, at all times relevant hereto, defendant Ms. Palumbo is an individual citizen of the United States who resides, upon information and belief, in the State of Connecticut and is the former spouse of Plaintiff and the mother of his two children, Laurabeth and Linsey.

### Facts Common to All Causes of Action

14.  Mr. Giddens was married to Ms. Palumbo in October, 1995 in the State of Florida where they resided for the next 10 years.

15.  During their marriage, Mr. Giddens and Ms. Palumbo had two children, Laurabeth, now age 10, and Lindsay, now age 7.

16.  Mr. Giddens and Ms. Palumbo were divorced on or about July 1, 2005 pursuant to an Order of the Honorable Terry Lewis in the State of Florida.

17.  Thereafter, there has been continued and ongoing litigation concerning the terms of the divorce; primarily focused on custody issues.

18.  These custody issues grew more acrimonious once Ms. Palumbo moved to Connecticut and subsequently married Mr. Palumbo.

19.  In fact, since marrying Mr. Palumbo, Ms. Palumbo has not only systematically attempted to alienate Mr. Giddens from his daughters, but has embarked on lengthy and

protracted meritless litigation[1] in an attempt to use her new husband's money to remove Mr. Giddens from his daughters' lives and to continue her personal vendetta against him.

20. Apparently, however, as simply trying to overwhelm Mr. Giddens with excessive litigation and costly filings was not effective in deterring Mr. Giddens, the Palumbos decided to resort to more aggressive tactics.

21. Specifically, the Palumbos decided to avail themselves -- and corrupt the services -- of Mr. Palumbo's former associates at the NYPD.

22. On July 30, 2006, Ms. Palumbo wrote to Mr. Giddens via electronic transmission and threatened that she was going to have him "locked up."

23. Three days later, Mr. Palumbo, using Ms. Palumbo's email account, wrote to Mr. Giddens that from that point forward, "...when you [Mr. Giddens] pick up Laurabeth and Linsey you [Mr. Giddens] will do so at the NYC police department at the 20th precinct located on West 82nd street between Columbus and Amsterdam Aves."

24. On August 10, 2006, Ms. Palumbo confirmed that pick-up on August 18, 2006 would be at the 20th Precinct.

25. Mr. Giddens requests for pick-up in a "more child friendly location" fell on deaf ears as the Palumbos had already determined that they cared more about scaring off Mr. Giddens than they did about Laurabeth and Linsey.[2] Even viewed in the light most favorable to the

---

[1] Including, most recently the filing of a suit in the State of Connecticut to remove jurisdiction from the Florida court, which had previously unequivocally asserted that it would not relinquish jurisdiction; a determination that the Connecticut Court readily acceded to.

[2] The fact that that the conspiracy had already commenced at that point is only bolstered by the fact that the visitation order provided that Mr. Giddens had the right to select the pick-up location.

Palumbos -- namely that they never intended to allow Laurabeth and Linsey see their father on August 18, 2006 despite Court direction for the same -- clearly the conspiracy to deprive Mr. Giddens of his constitutional rights had already been created and was in the process of being brought to fruition.

26. On the morning of August 18, 2006, at or about 9:30 a.m., Mr. Giddens duly appeared at the 20th Precinct just in time to observe Mr. Palumbo speak to Griffin; pat Griffin on the back; chuckle; get in his car; and drive away.

27. Griffin then turned to Mr. Giddens and asked him to come upstairs.

28. When Mr. Giddens asked why, Griffin told Mr. Giddens that he, Griffin, had some papers for Mr. Giddens to sign.

29. Perhaps naively, Mr. Giddens did as requested by Griffin, who was acting in his official capacity on that day in illegally and improperly retaining Mr. Giddens, and followed Griffin upstairs in the precinct house.

30. Once upstairs, Mr. Giddens was locked in a room and asked for identification which he provided.

31. Initially, Griffin only asked Mr. Giddens about his relationship with Mr. Palumbo, never once offering Mr. Giddens an explanation for his forced detention or offering him the opportunity to seek assistance of counsel.

32. After leaving Mr. Giddens briefly, Griffin returned and began to take Mr. Giddens's pedigree information after frisking him.

33. At that time, approximately 10:30 in the morning, Griffin informed Mr. Giddens that he was being placed under arrest for aggravated harassment by telephone.

34. As part of the conspiracy to deprive Mr. Giddens of his constitutional rights, as well as to abuse and harass him, Griffin and the City Defendants, at the request of the Palumbos, kept Mr. Giddens at the precinct all morning and well into the afternoon solely to ensure that he would not be processed that day, but, rather, kept in the Tombs overnight.

35. Not surprisingly, but tellingly, in their zeal to effect a false sentence against Mr. Giddens and adhere to the wishes of their civilian co-conspirators, Griffin and the City Defendants, added to the initial charge by asserting that Mr. Giddens, at 5'6 and 175 lbs., had physically threatened Mr. Palumbo, a former NYPD Detective who now runs his own security company, all while knowing that such allegations were completely fabricated.[3]

36. It was not until the afternoon of August 18, 2006 that Mr. Giddens was finally sent to Central Booking after being held in the precinct for most of the day and handcuffed for over one hour, resulting in bruising to his wrists; all over what is categorized by the City Defendants as "not an arrest charge".

37. Mr. Giddens was taken to Central Booking and locked up for the evening in a jail cell in the Tombs.

38. Mr. Giddens had never been arrested, much less incarcerated before, he was deprived of his freedom in an unjustifiable abuse of process by the Defendants on August 18, 2006.

39. As Defendants had specifically intended, Mr. Giddens felt tremendous anxiety at being locked up on false charges based solely on the say-so of the apparent henchmen of his ex-

---

[3] Even Mr. Palumbo recognized this as going too far and potentially derailing his carefully constructed plan, so he executed a Supporting Affidavit that corrected the "arrest" charge.

wife's new husband; all because he wanted to see his daughters during a visit that was covered and allowed for by Court order from the relevant family court in Florida.

40. Mr. Giddens' anxiety was understandably exacerbated by the fact that he was not in his home State, but rather in a large urban center about which he knew relatively little.

41. He genuinely feared for his very life. If Mr. Palumbo, with Ms. Palumbo's assistance, could orchestrate his arrest and incarceration on completely fictitious charges -- ones that, even if true, did not normally warrant arrest, much less incarceration -- what else could the former Detective have orchestrated for Mr. Giddens's time in jail?

42. Perhaps even more damaging and, upon information and belief, critical to the conspiracy, Mr. Giddens was faced with having to consider what his two daughters were thinking knowing that their father was incarcerated and locked up in jail.

43. Not surprisingly, as Laurabeth and Linsey quickly learned of their father's arrest and imprisonment, upon information and belief from the Palumbos who sought to further their Machiavellian scheme to separate Mr. Giddens from his daughters by turning them against him, Mr. Giddens faced, and continues to face, questions from his daughters concerning his incarceration and has had to address not only his won, but also his daughters', fears stemming from these events.

44. Mr. Giddens was brought before a Judge and bail was set at $2,000.00, which was posted by his brother, who had to fly up from Florida to post the same.

45. On August 19, 2006, after more than twenty-four hours of incarceration orchestrated at the behest of the Palumbos and effected by the City Defendants as active participants in the conspiracy, Mr. Giddens was released from custody on bail.

46. Mr. Giddens had to remain in New York pending the initial hearing that occurred during the following week and thereat a new hearing date was set forth some time in October.

47. In the interim, before the next hearing date, the People dismissed all charges with prejudice in the interests of justice.

48. Nevertheless, the Palumbos partially achieved their goal, as Mr. Giddens was advised by counsel to limit his visits to New York and the Palumbos refused to send his daughters down to him in Florida -- and as Mr. Giddens was now forced to deal with the psychological aftermath of knowing that the Palumbos could manipulate the City Defendants, who would willingly participate in effecting the Palumbos' personal scheme to violate Mr. Giddens's civil rights without even a second thought.

## AS AND FOR A FIRST CAUSE OF ACTION
(42 U.S.C. § 1983 and Conspiracy to Violate 42 U.S.C. § 1983 as Against Defendants)

49. Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "48" with the same force and effect as if fully set forth herein at length.

50. Mr. Giddens suffered a deprivation of his rights under the Fourth and Fourteenth Amendments on the basis of Defendants' illegal and improper actions.

51. Mr. Giddens was denied his constitutional rights to be free from seizure, arrest and incarceration without probable cause and without due process of law.

52. Defendants' actions were unreasonable and undertaken in bad faith.

53. Defendants knew that they were violating the Constitution and internal procedure, as well as established laws, and acted in both an intentional and negligent manner (1) when they illegally arrested and detained Mr. Giddens without justification, provocation or reasonable basis;

(2) when they failed to properly or timely process Mr. Giddens thereby assuring that he would spend a night in prison on a non-arrest charge which had no basis in reality; (3) when they attempted to cover up their ill-conceived conspiracy by adding language to the agreed-upon phony complaint charge; (4) when they failed to assess or investigate the facts surrounding any alleged wrongdoing on the part of plaintiff; and (5) *when they lent out their services to private citizens solely to do those individuals' personal bidding without any legal or other reasonable justification.*

54. The only basis for such actions on the part of Defendants was to illegally harass, intimidate and abuse Mr. Giddens, all because he sought to continue to see his daughters who were removed from Florida and transplanted to Connecticut where their mother was, and is, busy creating a new family with her new husband.

55. The Palumbos hatched this depraved conspiracy and then enlisted his former colleagues to effect it -- which the City Defendants knowingly joined without reservation and with no questions asked in a gross miscarriage of justice and a gross dereliction of duty.

56. There is no doubt that the Palumbos, jointly and individually, acted to instigate Mr. Giddens's arrest with Ms. Palumbo ensuring that Mr. Giddens indeed appeared at the precinct for his effective ambush and Mr. Palumbo ensuring that his former, and apparently current, cronies -- acting not only as agents of Palumbo, but also in their official capacity as officers in the NYPD -- not only falsely arrested Mr. Giddens, but also incarcerated in the Tombs for at least one night.

57. As a direct result of Defendants' conspiracy to effect the -- and the actual -- arrest, false imprisonment, prosecution and deprivation of liberty in contravention of the United States

Constitution and 42 U.S.C. §1983 of Mr. Giddens, all without probable cause, Mr. Giddens was damaged in an amount to be determined at trial, but in no event less than Five Million Dollars ($5,000,000.00) with interest thereon; costs and disbursements of this -- and the underlying criminal -- action, including reasonable attorneys' fees in both instances; and any such other and further relief as this Court deems fit and proper.

## AS AND FOR A SECOND CAUSE OF ACTION
(Assault and Conspiracy to Commit Assault)

58. Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "57" with the same force and effect as if fully set forth herein at length.

59. Defendants Griffin and Does engaged in and subjected Mr. Giddens to the immediate and realistic threat and fear of immediate harmful and offensive touching.

60. Not only were the actions of Defendants Griffin and Does specifically designed to have such an effect as previously orchestrated and determined by the Palumbos, but they had such a reasonable effect on Mr. Giddens.

61. As a direct result of Defendants' conspiracy to assault, and the actual assault of, Mr. Giddens, Mr. Giddens was damaged in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00) with interest thereon; costs and disbursements of this action, including reasonable attorneys' fees; and any such other and further relief as this Court deems fit and proper.

## AS AND FOR A THIRD CAUSE OF ACTION
(Battery and Conspiracy to Commit Battery)

62. Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "61" with the same force and effect as if fully set forth herein at length.

63. Defendants Griffin and Does engaged in and subjected Mr. Giddens to immediate harmful and offensive touching and battered him.

64. Defendants Griffin and Does specifically acted in such a manner at the specific behest of the Palumbos and with the authorization and consent of the NYPD and the City of New York.

65. As a direct result of Defendants' conspiracy to batter, and the actual battery of, Mr. Giddens, Mr. Giddens was damaged in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00) with interest thereon; costs and disbursements of this action, including reasonable attorneys' fees; and any such other and further relief as this Court deems fit and proper.

### AS AND FOR A FOURTH CAUSE OF ACTION
(False Arrest and Malicious Prosecution and Conspiracy to Complete False Arrest and Malicious Prosecution)

66. Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "65" with the same force and effect as if fully set forth herein at length.

67. At the behest of the Palumbos and as part of the conspiracy against Mr. Giddens, the City Defendants effected the arrest, incarceration and prosecution of Mr. Giddens with knowledge that there was no basis for the same.

68. Specifically, the Defendants actually effected, or conspired to effect, the false arrest, false imprisonment, malicious prosecution and deprivation of liberty in violation of due process and without probable cause of Mr. Giddens.

69. As a direct result of Defendants' conspiracy to effect the -- and the actual -- arrest, false imprisonment, prosecution and deprivation of liberty of Mr. Giddens, all without probable

cause, Mr. Giddens was damaged in an amount to be determined at trial, but in no event less than Five Million Dollars ($5,000,000.00) with interest thereon; costs and disbursements of this, and the underlying criminal, action, including reasonable attorneys' fees in both instances; and any such other and further relief as this Court deems fit and proper.

### AS AND FOR A FIFTH CAUSE OF ACTION
(Negligence Against the City Defendants)

70. Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "69" with the same force and effect as if fully set forth herein at length.

71. City Defendants owed a duty of care to Mr. Giddens, an individual citizen of the United States and a visitor to the State, City and County of New York.

72. Reasonable NYPD Officers would not have arrested, delayed the processing of, engaged restraints that were too tight on, improperly bolstered arrest documents regarding, incarcerated and assisted in the attempted prosecution of a United States citizen without probable cause.

73. Reasonable NYPD Officers would not have arrested, delayed the processing of, engaged restraints that were too tight on, improperly bolstered arrest documents regarding, incarcerated and assisted in the attempted prosecution of a United States citizen as a favor to a former colleague and now individual citizen without reasonable basis for believing the accuracy of the assertions.

74. City Defendants knew that the allegations of Mr. Palumbo were false when made and specifically, at the request of the Palumbos, joined in the conspiracy to deprive Mr. Giddens of, among other things, his civil rights; all in an attempt to assist the Palumbos in pursuit of their

nefarious, short-sighted and personal goal of separating Mr. Giddens from his two daughters.

75. Moreover, the City Defendants delayed the processing of Mr. Giddens so as to ensure that he was not released on August 18, 2006, but was forced to spend at least one night in the Tombs: a period of time that would have been much greater had Mr. Giddens's brother not been able to fly up from Florida immediately upon hearing news of Mr. Giddens's arrest and incarceration.

76. As a direct result of the City Defendants' negligence, Mr. Giddens was damaged in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00) with interest thereon; costs and disbursements of this action, including reasonable attorneys' fees; and any such other and further relief as this Court deems fit and proper.

### AS AND FOR A SIXTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress and Conspiracy to Inflict the Same)

77. Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "76" with the same force and effect as if fully set forth herein at length.

78. The Palumbos' conduct in soliciting former colleagues of Mr. Palumbo to engage in a conspiracy to deprive Mr. Giddens of, among other things, his freedom and civil rights, in furtherance of their own personal, petty vendetta and desire to run him out of his own daughters' lives constitutes extreme and outrageous conduct.

79. It is clear that the intent behind the Palumbos' action, including the request that the City Defendants not take it easy on Mr. Giddens and delay his processing so as to ensure that he be held in the Tombs for at least one night, was to cause Mr. Giddens extreme emotional

distress.

80. The City Defendants' conduct -- in depriving Mr. Giddens of, *inter alia*, his civil and constitutional rights by arresting him, delaying his processing, locking him up, ensuring that he spend a night -- for which he was had flown up from Florida to spend with his daughters -- incarcerated in the Tombs, all based on the knowingly false statements of a former colleague, as well as modifying the original documented "basis" for arresting Mr. Giddens so as to increase the severity of the purported, but non-existent, crime -- constitutes such extreme and outrageous conduct and dereliction of duty that it shocks the conscience.

81. In acting in such an egregiously despicable manner, the City Defendants, individually and as co-conspirators with the Palumbos, acted with the specific intent to cause extreme emotional distress.

82. As a direct result of the intentional, and/or reckless, acts on the part of the Defendants, Mr. Giddens, in fact, suffered, and suffers, from extreme emotional distress, including, but not limited to, fearing for his life, safety and well-being, as well as subsequent loss of sleep and anxiety on his, *and on his daughters'*, behalf.

83. As a direct result of the Defendants' intentional infliction of emotional distress and conspiracy to effect the same, Mr. Giddens was damaged in an amount to be determined at trial, but in no event less than Ten Million Dollars ($10,000,000.00) with interest thereon; costs and disbursements of this action, including reasonable attorneys' fees; and any such other and further relief as this Court deems fit and proper.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Municipal Liability)

84. Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "83" with the same force and effect as if fully set forth herein at length.

85. At all times relevant hereto, Defendants Griffin and Does were acting in the scope of their employment as police officers of the City.

86. NYPD and City, thereby, are liable through the doctrine of *respondeat superior* for the actions of Defendants Griffin and Does.

87. Defendants NYPD and City knew or should have known of the individual City Defendants' propensity to engage in the illegal and wrongful acts detailed above, and/or as a matter of policy and practice, have, with deliberate indifference, failed to take steps to uncover and/or correct such conduct.

88. Defendants NYPD and City have failed to take adequate steps to discipline, train, supervise or otherwise correct the improper and illegal conduct of defendant police officers, and/or as a matter of policy and practice, have, with deliberate indifference, failed to take steps necessary to uncover and/or correct such conduct.

89. Defendants NYPD and City have damaged Mr. Giddens by their failure to properly supervise, train, discipline, review and remove the individual City Defendants, and/or as a matter of policy and practice, have, with deliberate indifference, failed to take steps to uncover or correct such conduct.

90. Defendants NYPD and City fostered an environment in which the bad acts and willingness by current officers to break the law and deprive individual citizens of their

constitutional rights to do a favor for a former colleague, and individual citizen, are deemed acceptable behavior.

91. The moral depravity exhibited by the individual defendants was made possible by the environment fostered by the City and NYPD.

92. Defendant City was negligent in the operation of the NYPD and the officers thereof.

93. The injuries suffered by Mr. Giddens were proximately caused by the bad acts of the individual defendants and the policies of the NYPD and City of New York that made such bad acts possible.

94. The actions of the Defendants, including the NYPD and City of New York, resulted, *inter alia*, in the deprivation of Mr. Giddens's civil rights as protected by the United States Constitution, and specifically the Fourth and Fourteenth Amendments thereto.

95. As a direct result of these violations, Mr. Giddens has been damaged in an amount to be determined at trial, but in no event less than Five Million Dollars ($5,000,000.00) with interest thereon; costs and disbursements of this action, including reasonable attorneys' fees; and any such other and further relief as this Court deems fit and proper.

## Jury Demand

96.   Plaintiff hereby demands a trial by jury.

Dated: New York, New York
       October 24, 2007

*[signature]*

Law Offices of Neal Brickman, P.C.
Neal Brickman (NB0874)
Ethan Leonard (EL2497)
Attorneys for Plaintiff Giddens
317 Madison Avenue - 21st Floor
New York, New York 10021
(212) 986-6840